BALTIMORE & O. R. Co. and another *v*. ADAMS EXPRESS Co.[1]

*(Circuit Court, E. D. Missouri. October 21, 1884.)*

COMMON CARRIERS—PAYMENT OF ANTECEDENT CHARGES.
  It is not the duty of common carriers to pay antecedent charges on freight tendered to them by connecting carriers, even where it is customary to do so.

In Equity.

The bill states that it is the usage and custom among express companies, known to and heretofore acted upon by the defendant and by all other express companies, "that when a package of express matter is tendered to the connecting express company it receives the same and pays the tendering express company the charges which have accrued thereon for the services rendered by it, and thereupon transmits said parcel to another express company, or the point of destination, if the same is reached by it, and collects the same, with its own charges, from the consignee," and that the defendant and other specified express companies, with which the complainants "have heretofore conducted a very large business upon the basis of the usage aforesaid, have combined, confederated, and conspired for the purpose of destroying the express business of your orators, and for that purpose have suddenly, from different points, given verbal and other notices to the agents of your orators that on and after the fifteenth day of October, 1884, the said companies would not advance charges on express matter transferred to them by your orators." The other material facts are stated in the opinion of the court.

*Garland Pollard*, for complainant.

*Rumsey, Maxwell & Matthews* and *Samuel Breckenridge*, for defendant.

TREAT, J., *(orally.)* This is an application for an injunction to restrain the defendants from refusing to receive packages in the same

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

manner they have heretofore received them, and to compel them to prepay the charges. It is very well known that like questions have heretofore been presented to this court, in regard to which I have been a dissenting judge. In the conduct of business by these corporations, or *quasi* corporations, which to a greater or less extent fasten themselves upon the common business of the country through railroads and otherwise, very conflicting questions arise, because a railroad is bound, as a common carrier, to perform all the duties imposed upon it as such. It chooses to sublet, if you please, or fasten upon itself contracts with regard to these outside corporations, and by so doing puts itself in a condition that subjects the public at large to obligations or difficulties which, if the railroads themselves performed what they are required by law to perform, the shippers would be relieved of those difficulties. For illustration, a railroad · exists; it is bound by law as a common carrier to perform its duties through one or the other contrivance. It fastens upon itself a fast-freight contract, or an express contract. Where are its obligations? Is it to relieve itself of those, and remit the party to these outside corporations? Constant complications are arising with regard to such organizations. My brother judges would say that the courts might, to a large extent, regulate the mode of transacting business, each with the other, and one company enforce on the other and enforce upon the railroads a duty, as Mr. Pollard says, of doing business each for the other without discrimination.

Now, as far as I am concerned judicially, I have no faith in any such doctrine, but authorities superior to myself have, and in the light of the authority that is thus presented I must pass upon the question before me. Accepting, then, the proposition in the light of such authorities, all who act as common carriers must perform their functions without discrimination. Does that discrimination go so far as to say that they must pay antecedent charges, and trust the opportunity at the other end of the route of ever receiving anything? Must it advance to the shipping company all prior expenses incurred, and run the chances of ever collecting anything? What is the policy? At this end of the line, so to speak, shall they pay all these antecedent charges from Portland, Maine, for instance, under a C. O. D., and, not knowing the contents of the package, allow it to go forward? Is that the proposition of law? If the company at this end of the line, for illustration, has paid the advance charges, who is responsible therefor? The shipper and the company transporting? The charges advanced for the benefit of the company from whom it receives, as well as for the shipper of the article itself? Suppose it does not choose to trust the shipper or the company. Suppose both are insolvent—utterly insolvent. Is it bound to pay, day in and day out, the money required in such matters, with no possibility of receiving a sixpence remuneration for the transaction?

Now, I do not know, in the case here submitted, whether this dis-

v.22ғ,no.1—3

crimination, if there be such, does not rest on a sound proposition, to-wit, that the shipping express company cannot respond for the advances. I do not know how that is. I think, from the statement made here, that nothing appears in regard to that matter. Is that so?

*Mr. Pollard.* I think there is nothing said in regard to the responsibility of the company; but that is a point that will, I think, be conceded.

*The Court.* Very well; the defendant has a perfect right, and that is my judgment, to refuse to pay charges on shipments made to it by any express company or any railroad company, unless a sufficient guaranty in some form is given to it whereby no discrimination may occur.

*Mr. Pollard.* I suppose neither of these gentlemen will complain that this corporation is not responsible?

*The Court.* I have to take the case as I find it. It is not a question of the responsibility of the railroad. If we take them, we have to take them on the responsibility of the consignor. The part I am determining, and that is all there is in this case, is that an express company or a railroad company is not bound to prepay antecedent charges for anybody. It may or may not. If it chooses to do it for one company, because it considers it perfectly solvent, it can do it. If it chooses to doubt the solvency or responsibility of the other company or shipper, it has a right in the conduct of its affairs so to do. It is not bound to advance money for anybody. It has a right to transport goods without prepayment if it chooses, — I mean it is bound to do it, — but without being compelled to prepay charges. That is my theory of the administration of the business in this country, and I shall refuse the injunction. You ask these companies to advance payment for previous transportation, and they are not bound to advance anything to anybody.

*Mr. Pollard.* I understand your honor does not put it on the ground that it does not appear the complainants are not responsible for these charges?

*The Court.* No; I do not put it on that ground. I put it on this direct and positive ground: that no common carrier is bound to pay advances on packages brought to it to be transported thereafter, if it chooses to object thereto.

*Mr. Pollard.* Whether it carries for others or not?

*The Court.* Yes; anybody. That is the proposition I have been contending for during 30 years, and I have been over it so often that the older I grow the more positive I am in regard to it.

*Mr. Pollard.* On that theory, of course, it will be of no use to amend the bill.

*The Court.* Well, you may amend it, and it will be heard in that form; but I decide it now on the distinct ground that no common carrier is bound to pay the charges of a prior carrier at all.

*Mr. Pollard.* That covers the ground.

*The Court.* That is all there is of it. It is not bound to advance money to pay somebody else. It is the business of the shipper to look out for that himself.

*Mr. Maxwell.* Then I understand the order will be that the application for an injunction is refused, and the temporary order heretofore issued dissolved?

*The Court.* Certainly. As I have already said, the obligation of one carrier to the other is not that the carrier receiving the goods is bound to pay the advance charges. He may or may not, at his option. There may be reasons why he should pay for one and not for the other, precisely the same as an individual might be willing to accept an obligation as a matter of courtesy and not as a matter of duty; and if the corporation chooses to say, "I will not advance your charges for the purpose of transportation," it has a perfect right so to do, and will not be held liable for the obligations, not only of itself, but of all the corporations over whose lines goods are being shipped indefinitely. For the outcome may be, while it may nominally appear that the goods are of great value, in reality they may be of no worth. Then what? There is the ordinary C. O. D. transaction. It has to go back, necessarily, *seriatim*, to collect from this, that, and the other company all their respective charges, and there may be half a dozen intervening roads before it reaches the end. Why is it bound to carry that burden? It is not bound to do it. That is the view of this court, and has been for 30 years, and I still adhere to it.

There is another proposition connected with this matter that I may as well state. For illustration, a shipment is made by a railroad from Portland, Maine, to Denver, whereby there is a through shipment without any agreement between the intervening roads. The original shipper, to-wit, the Portland, Maine, road, may be responsible for the safe delivery at Denver; but suppose a road from Kansas City to Denver is not a party to that agreement, is it to be bound by the arrangement thus made? It is only bound as a common carrier from the time the shipment came to it, and not as to anything antecedent thereto. It is not responsible for what occurred, theretofore, unless it is an express party to the contract. The application for this injunction will therefore be denied.